UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW VINCENT YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:14-CV-499 (CEJ) |
| ) | |
| EDWARD J. FRIEDEL, and ) | |
| DHL EXPRESS (USA), INC., ) | |
| ) | |
| Defendants. ) | |

### MEMORDANDUM & ORDER

This matter is before the Court on plaintiff's motion to compel defendant DHL Express (USA), Inc. (DHL) to fully answer Interrogatories 1 and 9. Defendant has responded in opposition, and the issues are fully briefed.

I.   Background

Plaintiff brings this action seeking damages for personal injuries he allegedly sustained from a motor vehicle accident that occurred on November 12, 2012. Plaintiff alleges that defendant Friedel negligently made an improper left turn and failed to yield to plaintiff's scooter, which resulted in a collision. Plaintiff also seeks to hold Friedel's employer, DHL, liable under the theory of vicarious liability.

On April 29, 2014, plaintiff served DHL with interrogatories, which included two requests related to video surveillance taken of plaintiff after the date of the accident. Interrogatory 1 asks DHL whether it is aware of any recorded statement made by plaintiff regarding the allegations in the complaint and, if so, to state the date, place and time of the recording; the name and address of the person(s) connected with or present at the time of recording; the name and addresses of the persons under whose

direction and upon whose behalf the recording was made; and to submit to plaintiff a copy of the recording. Interrogatory 9 asks DHL whether it has knowledge of any recordings depicting plaintiff "at any time since the cause of action herein was filed" and, if so, to state the date it was recorded, the name and address of the person(s) performing the recording, and to submit to plaintiff a copy of the recording. [Doc. #19-2].

DHL objects to these requests on the grounds that they are vague, ambiguous, overly broad, burdensome, harassing, irrelevant, and protected under the work product privilege. However, without waiving its objections, DHL answered that it is in possession of a surveillance video, entitled "A Day in the Life Video of Andrew Young." [Doc. #19-2, at pp. 2]. Additionally, DHL submitted a privilege log to plaintiff identifying: (1) the dates the surveillance was conducted; (2) the identity of individual who created the video, and (3) a brief description of the content. [Doc. #20, at p. 2].

II. Discussion

A. General Objections

DHL's general objections to plaintiff's Interrogatories 1 and 9 are overruled. DHL has failed to provide any explanation to the Court as to how these requests are vague, ambiguous, overly broad, burdensome, harassing, or irrelevant. Furthermore, DHL's response to the instant motion to compel solely addresses its work product privilege objection. Thus, the Court finds that DHL has abandoned all other objections.

B. Work Product Privilege

Fed.R.Civ.P. 26(b)(3)(A) governs the work product doctrine and provides that "[o]rdinarily, a party may not discover documents and tangible things that are

2

prepared in anticipation of litigation or for trial[.]" However, material protected by this doctrine can be discoverable "upon a showing of substantial need for the materials in preparation of [the] case and the inability, without undue hardship, to obtain the substantial equivalent of the material by other means." In re Osage Marine Servs., 2011 U.S. Dist. LEXIS 148740, *4 (E.D. Mo. Dec. 28, 2011) (citing Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997)).

In the instant case, plaintiff does not dispute that the surveillance video qualifies as work product. See Pl.'s Motion, Doc. #19. Instead, plaintiff argues that the video is discoverable because there is a substantial need for the video and because plaintiff has no other way to procure its content. Plaintiff further argues that a copy of the video should be submitted to him prior to his deposition. In response, DHL argues that it should not be required to produce the video because it has no intention to offer it as substantive evidence at trial. However, DHL states that it is willing to agree to produce the video after plaintiff's deposition if DHL later determines that it will use the video for impeachment purposes at trial.

The Eighth Circuit has not ruled on whether surveillance videos in personal injury litigation are protected by the work product doctrine. However, district "courts have uniformly ordered the discovery of surveillance videos in cases like this despite their status as work product." Roa v. Tetrick, 2014 WL 695961, *3 (S.D. Ohio Feb. 24, 2014) (citing Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 228 (D. Mass. Jan. 10, 2006)). The rationale for permitting the discovery of surveillance videos in personal injury cases is based on the fact that videos can be selectively edited or manipulated by the photographer. See e.g. Bradley v. Wal-Mart, 196 F.RD. 557, 558 (E.D. Mo.

3

Aug. 23, 2000); Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, 151 (E.D. Pa. 1973) (if misleading photography creates a discrepancy between the plaintiff's testimony regarding his injuries and the imagery on the video, the plaintiff should have the opportunity to view the film and expose the fraud). Furthermore, "a plaintiff alleging claims for personal injury has a substantial need for surveillance evidence in preparing his case for trial, due to the relevance and importance of such evidence, and the substantial impact it may have at trial[.]" Gutshall v. New Prime, Inc., 196 F.R.D. 43, 46 (W.D.Va. July 19, 2000). Following this sound reasoning, the Court finds that DHL is required to submit to plaintiff a copy of any recordings taken of plaintiff subsequent to the November 12, 2012 accident, regardless of the purpose for which DHL intends to use the video at trial.

The next issue this Court must answer is whether DHL should be required to produce the video prior to or after DHL's deposition of plaintiff. Unfortunately, there is no consensus among courts regarding this issue. On one hand, some courts limit production to after the plaintiff's deposition. In Snead, 59 F.R.D. at 151, the court explained:

> Before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully as to his injuries, their effects and his present disabilities. Once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach credibility, and his knowledge at deposition that the films may exist should have a salutary effect on any tendency to be expansive. At the same time, if plaintiff believes that the films seem to give a false impression, he can then obtain the necessary data to serve as a basis for cross-examination.

Similarly, a court in this district has stated that "[w]hen a defendant has determined that at trial it will use the tape, *use the tape only for impeachment* or has not specified

4

whether or not it will use the tape, the better reasoned opinions require the tape to be produced after the plaintiff's deposition has been taken." Bradley v. Wal-Mart, 196 F.RD. 557, 557 n. 1 (E.D Mo. Aug. 23, 2000) (emphasis added); see also Wightman v. Reassure America Life Ins. Co., 2006 WL 3483962, *2 (S.D. Ohio Nov. 30, 2006) (ordered defendant to produce surveillance materials fifteen days after plaintiff's deposition); compare to Karr v. Four Seasons Maritime, Ltd., 2004 WL 797728, *5-6 (E.D.La. Apr. 12, 2014) (court ordered disclosure of surveillance materials because defendant did not represent whether the video would be limited exclusively to impeachment).

In contrast, other courts have ordered that surveillance material must be produced prior to a plaintiff's deposition, regardless of whether defendant represents that it will rely upon the evidence for impeachment purposes only. See e.g. Gutshall v. New Prime, Inc., 196 F.R.D. at 46; Babyage.com, Inc. v. Toys "R" Us, Inc., 458 F. Supp.2d 263 (E.D.Pa. Oct. 18 2006). In choosing this approach, one court explained that "[w]hile surprise has a healthy prophylactic effect against possible perjury, on balance, cases are more likely to be decided fairly on their merits if the parties are aware of all the evidence[.]" Gutshall, Inc., 196 F.R.D. at 45. Another court reasoned that "'fairness concerns weigh against the kind of sandbagging involved when the moving party sets up grounds for impeachment by using undisclosed materials in an attempt to manufacture inconsistencies.'" Gardner v. Norfolk Southern Corp., 2014 WL 1515525, *2-3 (D.N.J. Apr. 17, 2014) (quoting Louisma v. Automated Fin., LLC, 2011 WL 5105377, *3 (N.D.Ill. Oct. 27, 2011)).

After carefully reviewing the relevant case law and balancing the interests of both parties, the Court finds that DHL should be permitted to protect the contents of the surveillance video until it has the opportunity to depose the plaintiff. This approach allows a defendant to freely impeach a plaintiff regarding any and all alleged injuries, while also providing plaintiff with an adequate opportunity to review any inconsistencies between his testimony and the video prior to trial. If plaintiff is concerned that the video inaccurately or fraudulently depicts his physical abilities as the result of improper editing or manipulation, plaintiff will have an ample opportunity to investigate the video's authenticity and accuracy. Thus, the Court cannot agree that this approach would prevent this case from being decided fairly on its merits.

* * *

For the above stated reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel [Doc. #18] is **granted**.

**IT IS FURTHER ORDERED** that defendant DHL Express (USA), Inc. shall produce the withheld surveillance materials not later than **fifteen (15) days** after plaintiff's deposition is taken.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2014.